**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **BLITZSAFE TEXAS, LLC,** | ) | |
| | ) | |
| | ) | Case No. 2:17-CV-00418-JRG |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **BAYERISCHE MOTOREN WERKE AG** | ) | |
| **AND BMW OF NORTH AMERICA,** | ) | |
| **LLC,** | ) | |
| | | |
| *Defendants*. | | |

**DEFENDANTS BAYERISCHE MOTOREN WERKE AG'S AND BMW OF NORTH AMERICA, LLC'S MOTION TO RECONSIDER DENIAL OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER (DKT. 60)**

# **TABLE OF CONTENTS**

I.      INTRODUCTION: THIS IS NOT THE RIGHT DISTRICT FOR THIS CASE............... 1

II.     FACTUAL BACKGROUND: THE COURT'S ORDER OF SEPTEMBER 6,
        2018.................................................................................................................... 2

        A.      Venue as to BMWNA........................................................................... 2

        B.      Jurisdiction over BMWAG ................................................................... 4

III.    STANDARD OF REVIEW: RECONSIDERATION IS REQUIRED TO
        CORRECT A CLEAR ERROR OF LAW AND/OR TO PREVENT MANIFEST
        INJUSTICE.......................................................................................................... 5

IV.     ARGUMENT: CLEAR ERROR REQUIRES RECONSIDERATION OF THE
        COURT'S DUAL VENUE AND JURISDICTION DETERMINATIONS...................... 5

        A.      The Court Should Reconsider Its Venue Holding for BMWNA as the
                Order Relies on Inaccurate Extra-Record Facts and It Does Not Follow the
                Law ....................................................................................................... 5

                1.      The Court used judicially-noticed proofs, some which are factually
                        incorrect, and improperly usurped Plaintiff's burden to prove
                        venue ............................................................................................ 7

                2.      A third-party dealership is *not* a place of a separate defendant ................ 11

        B.      The Court Clearly Erred By Finding Jurisdiction Over BMWAG ...................... 13

V.      CONCLUSION: THE COURT SHOULD RECONSIDER ITS ORDER ...................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*,
  No. 5:14-cv-2022, 2018 WL 400326 (N.D. Ohio Jan. 12, 2018) ............................................6

*In re Benjamin Moore & Co.*,
  318 F.3d 626 (5th Cir. 2002) ...............................................................................................5

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994)...............................................................................................4

*Boston Sci.. Corp. v. Cook Grp. Inc.*,
  269 F. Supp. 3d 229 (D. Del. 2017)........................................................................................7

*Bristol-Meyers Squibb Co. v. Sup. Ct. of CA*,
  137 S. Ct. 1773 (2017)...........................................................................................................15

*Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*,
  No. 17-cv-379, 2017 WL 3980155 (D. Del. Sept. 11, 2017)....................................................7

*CAO Lighting, Inc. v. Light Efficient Design*,
  No. 4:16-cv-00482, 2017 WL 4556717 (D. Idaho Oct. 11, 2017) ...........................................6

*Celgard, LLC v. SK Innovation Co., Ltd.*,
  792 F.3d 1373 (Fed. Cir. 2015)..............................................................................................13

*Costello v. Flatman, LLC*,
  558 Fed. Appx. 59 (2d Cir. 2014)............................................................................................7

*In re Cray*,
  871 F.3d 1355 (Fed. Cir. 2017)................................................................................... *passim*

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)...............................................................................................................15

*Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*,
  531 F.2d 1382 (7th Cir. 1976) ...........................................................................................7, 11

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
  No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018)
  (Bryson, J.)......................................................................................................................... *passim*

*Entry Sys., LLC v. Vivint, Inc.*,
  No. 2:14-CV-1089-JRG, Doc. No. 21 (E.D. Tex. Nov. 14, 2012) ...........................................3

*Ford Motor Co. v. Texas Dep't of Transp.*,
    264 F.3d 493 (5th Cir. 2001) ...........................................................................12

*Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*,
    No. 17-cv-01803, 2017 WL 4155347 (N.D. Cal. Aug. 29, 2017) ...........................7

*Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*,
    290 F. Supp. 3d 599 (N.D. Tex. 2017) ................................................................6

*Grantham v. Challenge-Cook Bros.*,
    420 F.2d 1182 (7th Cir. 1969) ......................................................................7, 11

*Hamilton v. Williams*,
    147 F.3d 367 (5th Cir. 1998) ...........................................................................5

*Hildebrand v. Wilmar Corp.*,
    No. 17-cv-02821, 2018 WL 1535505 (D. Colo. Mar. 29, 2018)...........................6

*In re HTC Corp.*,
    889 F.3d 1349 (Fed. Cir. 2018)........................................................................4

*In re HTC Corp.*,
    No. 2018-130, D.I. 32 (Fed. Cir. Sept. 6, 2018) .................................................4

*Int'l Truck & Engine Corp. v. Bray*,
    372 F.3d 717 (5th Cir. 2004) .........................................................................11

*JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*,
    No. 3:16-cv-03153, 2017 WL 4512501 (M.D. Tenn. Oct. 10, 2017)......................6

*Kabb, Inc. v. Sutera*,
    No. 91-cv-3551, 1992 WL 245546 (N.D. Tex. Sept. 4, 1992) ...............................7

*Knapp-Monarch Co. v. Casco Prod. Corp.*,
    342 F.2d 622 (7th Cir. 1965) .........................................................................11

*Lodsys, LLC v. Brother Intern. Corp.*,
    Case No. 2:11-CV-90-JRG, 2013 WL 1338767 (E.D. Tex. Jan. 14, 2013) ............5

*LoganTree LP v. Garmin Int'l, Inc.*,
    No. SA-17-CA-0098, 2017 WL 2842870 (W.D. Tex. June 22, 2017)....................7

*Manville Sales Corp. v. Paramount Sys. Inc.*,
    917 F.2d 544 (Fed. Cir. 1990)........................................................................11

*Motion Games, LLC v. Nintendo Co., Ltd.*,
    Case No. 6:12-CV-878-LED-JDL, 2014 WL 11621698 (E.D. Tex. March 28,
    2014) ...............................................................................................13, 14

*NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*,
    Case No. 6:10-CV-229-JDL, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ..........................13

*OptoLum, Inc. v. Cree, Inc.*,
    No. 16-cv-03828, 2017 WL 3130642 (D. Ariz. July 24, 2017)...................................................7

*Patent Holder LLC v. Lone Wolf Distributors, Inc.*,
    No. 17-23060-CIV, 2017 WL 5032989 (S.D. Fla. Nov. 1, 2017) ...........................................6

*Pickett v. Sheridan Health Care Center*,
    684 F.3d 632 (7th Cir. 2011) ...................................................................................................7

*Reflection, LLC v. Spire Collective LLC*,
    No. 17-cv-1603, 2018 WL 310184 (S.D. Cal. Jan. 5, 2018) ...................................................6

*Rimade Ltd. v. Hubbard Enterprises*,
    388 F.3d 138 (5th Cir. 2004) .................................................................................................12

*Soverain IP, LLC v. AT&T, Inc.*,
    No. 2:17-cv-293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017), *report and
    recommendation adopted* 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017)............................5, 6

*Talsk Research Inc. v. Evernote Corp.*,
    No. 16-cv-2167, 2017 WL 4269004 (N.D. Ill. Sept. 26, 2017)..................................................7

*TC Heartland LLC, v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017)......................................................................................................1, 13

*U.S. v. Gen. Motors Corp.*,
    323 U.S. 372 (1945).................................................................................................................15

*Walden v. Fiore*,
    571 U.S. 2774 (2014)...............................................................................................................15

*West View Research, LLC v. BMW of North Am., LLC*,
    Case No. 16-CV-2590-JLS (AGS), 2018 WL 4367378 (S.D. Cal. Feb. 5,
    2018) .......................................................................................................................................12

*Wet Sounds, Inc. v. PowerBass USA, Inc.*,
    No. CV H-17-3258, 2018 WL 1811354 (S.D. Tex. Apr. 17, 2018) ........................................6

*Wi-Lan, Inc. v. HTC Corp.*,
    Case No. 2:11-CV-68-JRG, 2012 WL 2461112 (E.D. Tex. June 27, 2012) ..........................14

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018)........................................................................................1, 6, 8

**Federal Statutes**

28 U.S.C. § 1400(b) ................................................................................................. *passim*

**State Statutes**

Texas Occupations Code .................................................................................8, 10, 11

Texas Occupations Code § 2301.476(c) ...................................................................3, 8

**Rules**

Fed. R. Civ. P. 59(e) .................................................................................................5

**Other Authorities**

Wright & Miller, Fed. Prac. & Proc. Juris. § 3823 (4th ed.) ...........................................6

## I.     INTRODUCTION: THIS IS NOT THE RIGHT DISTRICT FOR THIS CASE

Respectfully, Defendants Bayerische Motoren Werke AG ("BMWAG") and BMW of North America, LLC ("BMWNA") (together, "Defendants") move for reconsideration of the Court's September 6, 2018 Order (Dkt. 90) (the "Order"), denying the October 16, 2017 motion to dismiss for lack of venue as to BMWNA and for lack of jurisdiction as to BMWNA. (Dkt. 60).

First, BMWNA respectfully requests that that Court reconsider its decision that venue exists in this District. BMWNA does not reside here, as, for venue, there must be a regular and established place of business of the defendant in the district. *TC Heartland LLC, v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1516 (2017). In finding venue, the Order makes two fundamental errors. First, the Order takes the extraordinary step of going outside the record to establish venue, thereby taking on the burden of Blitzsafe Texas, LLC ("Plaintiff") to prove that this District is the appropriate venue. *See In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). By conducting its own fact finding, rather than ruling on the issues presented by the parties, the Court misconstrued facts and reached an erroneous conclusion. Second, the Order misapplied the law by finding that one corporate entity can "ratify" a place owned, operated, and controlled by a separate party, even if separate companies maintain and observe all corporate formalities (and where there is no evidence to support piercing the corporate veil or alter ego). Fundamentally, the Order defies abundant case law—including case law from this District—that a third-party dealership cannot be the venue-anchoring place of BMWNA. *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018) (Bryson, J.).

Second, BMWAG respectfully requests that the Court reconsider its decision to exercise jurisdiction over BMWAG. The exercise of jurisdiction over BMWAG is unreasonable and unfair, because BMWAG is a German company that does not make, use, sell, or offer to sell any products in the Eastern District of Texas. The Order requires reconsideration because it provides a basis for

1

jurisdiction over any company that sells any product through distribution channels, so long as that product is eventually sold in Texas—a result that cannot square with current jurisdiction precedent.

BMWNA and BMWAG thus respectfully request reconsideration of the Order, dismissal of the First Amended Complaint, or alternatively, transfer of the case to the District of New Jersey.

## II.   FACTUAL BACKGROUND: THE COURT'S ORDER OF SEPTEMBER 6, 2018

BMWAG and BMWNA originally filed the motion to dismiss on August 28, 2017 (Dkt. 30), but Blitzsafe amended its complaint, and BMWAG AND BMWNA then renewed the motion on October 16, 2017 (Dkt. 60). The Court ruled on the motion in its September 6, 2018 Order.

### A.   Venue as to BMWNA

The Court's Order found venue appropriate as to BMWNA under the second half of 28 U.S.C. § 1400(b),[1] concluding that BMWNA has a place of business in the District, despite not owning or leasing offices or facilities in the District. (Dkt. 90 at 7–25).  The Court recognized that the venue statute has three requirements relevant to the "regular and established place of business" inquiry: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Id.* at 10 (citing *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017)).  The Court relied on Plaintiff's allegation that there are four dealerships in the District,[2] to conclude that the first two requirements were met. *Id.* at 10. The Court then focused

---

[1] 28 U.S.C. § 1400(b) provides that "[a]ny civil action for patent infringement may be brought . . . where the defendant has committed acts of infringement and has a regular and established place of business."  As to "acts of infringement," the Court concluded that Blitzsafe alleged that BMWNA had "committed acts of infringement" in the District sufficient to meet venue statute requirements. *Id.* at 9. The Court reasoned, "[s]ince the sale may occur where the buyer is located, BMWNA has at least offered for sale and/or sold vehicles containing the infringing products in this District." *Id.*

[2] The four dealerships at issue in the District include three independent BMW dealerships, (1) BMW of Beaumont, (2) BMW of Tyler, (3) Classic BMW, as well as (4) MINI of Plano.

on whether these third-party owned and operated dealerships were "of the defendant," *i.e.*, somehow attributable to BMWNA.

First, the Order took judicial notice of a statement from a separate, unrelated case that BMWNA "has conducted and does conduct business in [the Eastern District of Texas] by distributing automobiles to dealers." *Id.* at 13 (citing *Entry Sys., LLC v. Vivint, Inc.*, No. 2:14-CV-1089-JRG, Doc. No. 21, ¶ 4 (E.D. Tex. Nov. 14, 2012).  The Court did not state how "conducting business" was relevant to the inquiry if/how third-party dealerships were "places of the defendant."

Second, the Order acknowledged that, according to Texas Occupations Code § 2301.476(c), BMWNA is "not permitted to own or control, generally, the dealerships within this District." *Id.* at 14. Yet, the Court reasoned that this did "not mean that they are not places *of* BMWNA under the third *In re Cray* factor, although, certainly, at first glance, the prohibition cuts against such a finding." *Id.* (emphasis in original). The Court held that BMWNA has "adopted and ratified the dealerships within this District as its places of business," (*id.* at 15), based on several "facts," many of which were introduced not by Plaintiff, but by the Court's own, new investigation.

Third, without a source, the Order concluded that "BMWNA does not permit sales of any new BMW vehicle from any location *except* authorized dealers, such as the BMW Centers found within this district." *Id.* Next, the Court found that dealerships in the District are "*named* 'BMW'," although the Court continued in the same sentence to note that the dealerships each have specific, non-BMWNA names (for example, BMW of Tyler, BMW of Beaumont, and Classic BMW). *Id.* at 16. Finally, the Order took judicial notice of websites, *which neither party had cited*, to purportedly show that independent third-party dealerships are "places of" BMWNA, for example:

- GoogleMaps images purportedly showing that each of the BMW dealerships in the District are held out to be "places of BMW," despite the photographs also showing the full name of each dealership (*e.g.*, BMW of Tyler, BMW of Beaumont, and Classic BMW). *Id.* at 16–17 n.7.

- "Search New Vehicle Inventory" feature, as accessed via the www.bmwusa.com website, purportedly showing vehicles available near zip code 75701,[3] which refers customers to third-party dealership websites for accurate quotes on a customer's selected BMW. *Id.* at 19 n.10.

- "Schedule a Test Drive/Contact a BMW Center/Request a Quote" features, as accessed via the www.bmwusa.com website, where BMWNA purportedly "collect[s] customer information, and provid[es] that information to its BMW Centers," referring any Eastern District of Texas customer that visits BMWNA's website to a local non-BMWNA BMW Center. *Id.* at 20.

- "Build Your Own" feature, as accessed via the www.bmwusa.com website, where any Eastern District of Texas customer may assemble a custom build of a BMW model and then proceed to order it—via a third-party non-BMWNA BMW Center located in the District. *Id.* at 20.

Based on these purported facts, and in particular, the new research conducted by the Court, the Court found "clear-cut ratification" of the "BMW dealerships in this District [as] places of business of BMWNA within the context of the special patent venue statute, § 1400(b)." *Id.* at 21.

Fourth, the Order also found a further basis for exercising venue, namely that BMWNA "conducts its business of the provision of new purchase warranties and service pursuant to those warranties to the consuming public in this district through its authorized dealerships." *Id.* at 24.

### B.    Jurisdiction over BMWAG

The Order also denied BMWAG's motion to dismiss the Amended Complaint for lack of jurisdiction. *Id.* at 1–5. Citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), the Court held that jurisdiction was appropriate because "BMWAG places the accused products into the stream of commerce with knowledge that, through BMWNA's established distribution to other BMW entities, the accused vehicles will be sold in Texas." *Id.* at 4.[4]

---

[3] 75701 is the zip code for the Tyler, Texas area.  https://www.unitedstateszipcodes.org/75701/.

[4] The Court also denied BMWAG's motion to dismiss for lack of venue. Citing *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018), the Court held that, because BMWAG is a foreign entity, "venue is proper in this District and, indeed, in any district." (Dkt. No. 90 at 6). The Federal Circuit recently denied rehearing *en banc* in *In re HTC*. *See In re HTC Corp.*, No. 2018-130, D.I. 32 (Fed. Cir. Sept. 6, 2018) (slip opinion). BMWAG does not seek reconsideration on venue, but BMWAG does preserve all objections to venue in view of any potential Supreme Court review of this issue.

### III.    STANDARD OF REVIEW: RECONSIDERATION IS REQUIRED TO CORRECT A CLEAR ERROR OF LAW AND/OR TO PREVENT MANIFEST INJUSTICE

The Court has the authority to grant a motion for reconsideration under Fed. R. Civ. P. 59(e). *Lodsys, LLC v. Brother Intern. Corp.*, Case No. 2:11-CV-90-JRG, 2013 WL 1338767, at *3 (E.D. Tex. Jan. 14, 2013); *Hamilton v. Williams*, 147 F.3d 367, 379 n.10 (5th Cir. 1998). Grounds for granting such a motion include: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).

### IV.    ARGUMENT: CLEAR ERROR REQUIRES RECONSIDERATION OF THE COURT'S DUAL VENUE AND JURISDICTION DETERMINATIONS

It is clear error to determine that this District is the appropriate venue for BMWNA, where there are no "places of" BMWNA in the District, as the evidence contradicts the core of venue-related facts in the Order (*see generally* Decl. of Lavenue, Ex. A (Rebuttal Chart)), Plaintiff failed to meet its burden of proving venue, and the Order contradicts the decisions in *EMED Techs.*, 2018 WL 2544564 (E.D. Tex. June 4, 2018) (Bryson, J.) and *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted* 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017). It would also be clear error to hold jurisdiction over BMWAG, an entity with no direct contacts to Texas. (Dkt. 60, Schäck & Göbel Decl. ¶¶ 4–12).

#### A.    The Court Should Reconsider Its Venue Holding for BMWNA as the Order Relies on Inaccurate Extra-Record Facts and It Does Not Follow the Law

The Order takes the extraordinary step of using extra-record facts to convert third-party owned and operated dealerships into "places of" BMWNA, even though the Federal Circuit has cautioned that any venue-anchoring place of business must "be a place *of the defendant*." *In re Cray*, 871 F.3d at 1363 (emphasis in original). Moreover, with the Court having stepped into Plaintiff's shoes, by researching, finding, and then relying on extra-record information, which

neither party cited or pleaded, the Order violates the principle that it is *Plaintiff's* burden to

establish venue. *In re ZTE*, 890 F.3d at 1013. Further, the Order contradicts this Court's recent

decisions in *EMED Techs.*, which confirmed that the "consistent and substantial case law authority

that the place of business of a corporation's distributor is not, without more, an appropriate venue

for a patent infringement action," 2018 WL 2544564, at \*3, and *Soverain IP*, which found that a

place of business of one corporate entity cannot be imputed to another unless the entities "lack

formal corporate separateness, which is a difficult standard to meet," 2017 WL 5126158, at \*1.

For purposes of venue, the law is definite that, "[s]o long as a formal separation of [closely

related] entities is preserved, the courts ordinarily will not treat the place of business of one

corporation as the place of business of the other." *EMED Techs.*, 2018 WL 2544564, at \*2 (citing

Wright & Miller, Fed. Prac. & Proc. Juris. § 3823 (4th ed.)). And "there is abundant case law from

other district courts holding that a distributor's place of business cannot establish venue for its

supplier." *EMED Techs* 2018 WL 2544564, at \*2 (collecting cases).[5]

---

[5] *See Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. CV H-17-3258, 2018 WL 1811354, at \*2 (S.D. Tex. Apr. 17, 2018) (third-party distribution centers insufficient); *Hildebrand v. Wilmar Corp.*, No. 17-cv-02821, 2018 WL 1535505, at \*3 (D. Colo. Mar. 29, 2018) (no venue where "the places of business on which Mr. Hildebrand bases venue are the physical locations of Wilmar's distributors, not those of Wilmar"); *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*, No. 5:14-cv-2022, 2018 WL 400326, at \*9 n.8 (N.D. Ohio Jan. 12, 2018) ("While APS maintains that FPI has a close relationship with its distributors, this is still insufficient to establish that FPI has a regular and established business in the district, as any such physical presence of the distributor belongs to the distributor and not FPI."); *Reflection, LLC v. Spire Collective LLC*, No. 17-cv-1603, 2018 WL 310184, at \*3 (S.D. Cal. Jan. 5, 2018) ("[A] distributor or subsidiary of a parent corporation selling the infringer's product does not demonstrate that a defendant has a regular and established business in this district."); *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 611 (N.D. Tex. 2017) (presence of third-party sales representatives insufficient); *Patent Holder LLC v. Lone Wolf Distributors, Inc.*, No. 17-23060-CIV, 2017 WL 5032989, at \*6 (S.D. Fla. Nov. 1, 2017) (physical locations of defendant's dealers in the district "are irrelevant to the Court's analysis under § 1400(b)"); *CAO Lighting, Inc. v. Light Efficient Design*, No. 4:16-cv-00482, 2017 WL 4556717, at \*3 (D. Idaho Oct. 11, 2017) (holding that physical location of distributors does not establish venue because the defendant "does not own, rent, lease, or occupy these locations or any other property or equipment in the state"); *JPW Indus.,*

**1.    The Court used judicially-noticed proofs, some which are factually incorrect, and improperly usurped Plaintiff's burden to prove venue**

It cannot be disputed that the BMW dealerships in this district are *not* owned or operated by BMWNA. (Hernandez Decl. ¶¶ 4–7). The Court concluded otherwise by relying on many (in fact, 23) factual allegations not raised by Plaintiff, to which BMWNA had no opportunity to respond.[6] (Ex. A (Rebuttal Chart)). Thus, the Court clearly erred, by usurping Plaintiff's role as

---

*Inc. v. Olympia Tools Int'l, Inc.*, No. 3:16-cv-03153, 2017 WL 4512501, at *3 (M.D. Tenn. Oct. 10, 2017) (holding that "business connections with distributors, retailers, and consumers in this district" insufficient); *Talsk Research Inc. v. Evernote Corp.*, No. 16-cv-2167, 2017 WL 4269004, at *4 (N.D. Ill. Sept. 26, 2017) ("The Federal Circuit's decision in *Cray* leaves no room for Plaintiff to argue that the handful of non-employee, independent contractors present in this District constitute a 'regular and established place of business' for Defendant within the meaning of § 1400(b)."); *Boston Sci.. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 248 (D. Del. 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, No. 17-cv-379, 2017 WL 3980155, at *17 (D. Del. Sept. 11, 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); *Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*, No. 17-cv-01803, 2017 WL 4155347, at *7 (N.D. Cal. Aug. 29, 2017) (using third-party company to sell products is insufficient); *OptoLum, Inc. v. Cree, Inc.*, No. 16-cv-03828, 2017 WL 3130642, at *6 (D. Ariz. July 24, 2017) (selling infringing products at Home Depot stores in the district does not establish a place of business for the manufacturer); *LoganTree LP v. Garmin Int'l, Inc.*, No. SA-17-CA-0098, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) ("It is well settled that the mere presence of independent sales representatives does not constitute a 'regular and established place of business' for purposes of Section 1400(b)." (quoting *Kabb, Inc. v. Sutera*, No. 91-cv-3551, 1992 WL 245546, at *2 (N.D. Tex. Sept. 4, 1992))); *see also Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*, 531 F.2d 1382, 1387 (7th Cir. 1976) ("In these cases we found venue improper in the subject district even though defendant's activities in the district included one or more of the following: maintaining an exclusive distributorship; establishing and maintaining some control over a chain of exclusive, independent distributors; maintaining an independent business man as a sales representative on a commission basis...." (quoting *Grantham v. Challenge-Cook Bros.*, 420 F.2d 1182, 1184–85 (7th Cir. 1969))).  Case law to the contrary was not readily found during research.

[6] Other district court decisions have been remanded upon taking improper judicial notice of extra-record facts. *See, e.g.*, *Costello v. Flatman, LLC*, 558 Fed. Appx. 59, 60–61 (2d Cir. 2014) (summary order) (remanding where district court improperly took judicial notice of the ADA-accessibility of certain businesses by visiting them); *Pickett v. Sheridan Health Care Center*, 684 F.3d 632, 650–51 (7th Cir. 2011) (remanding where court took judicial notice of economic index). Regarding judicially noticed facts, of the forty-two alleged "facts" that are cited in the Order, twenty-three were found by the Court, responses to which are attached. (Ex. A (Rebuttal Chart)).

the one bearing the burden to prove venue is appropriate. *In re ZTE*, 890 F.3d at 1013. And, as shown by all of the evidence of record now, these allegations do not support venue in this District. Indeed, there are many examples of the impropriety of the Order's judicially-noticed fact-findings.

First, although recognizing that the Texas Occupations Code (TOC) contains a bar on automobile manufacturers owning dealerships, the Order referenced exceptions but then deemed the exceptions "of no moment in the present analysis." (Dkt. No. 90 at 13–14). Yet, BMWNA *does not* own any dealerships in the District and fully complies with TOC § 2301.476(c).[7] (Hernandez Decl. ¶ 6). The sections of the TOC as cited in the Order relate to *temporary* ownership, which cannot square with the requirement that a "place" must be "regular and established." *In re Cray*, 871 F.3d at 1363. Further, as expert analysis of the TOC shows, BMWNA is specifically prohibited from directly *or indirectly* owning or controlling a dealership. (Decl. of Herring at ¶¶ 8–16).

Second, the Order *independently found* that BMWNA does not permit sales of any new BMW vehicle from any location except authorized dealers and that "BMW, through its franchised dealers, sells BMW cars[.]" (Dkt. No. 90 at 15–16). But, this cuts against venue, as "franchised dealers" are separate entities, not owned or operated by BMWNA, and BMWNA neither owns nor controls any place of business that sells cars directly in this District. (Hernandez Decl. ¶¶ 4–7).

Third, the Order *independently found* that dealerships in the District are named "BMW," display the BMW logo, and are held out to the consuming public as places of BMW for the purchase of new BMWs. (Dkt. No. 90 at 16–17 n.7). But, the photographs in the Order[8] also show

---

[7] BMWNA owns one dealership, not in the State of Texas, which existed before state laws prohibited automakers/distributors from owning/controlling dealerships. (Hernandez Decl. ¶ 9).

[8] In fact, the various judicially-noticed pictures of dealerships, as shown in the Order, all display large, prominent signs, which clearly bear the full name of each individual dealership. A selective identification of a single "BMW" logo does not accurately represent the dealership, because the BMW logo is not displayed without the full name of the dealership also displayed on the premises:

the full name of each dealership—e.g., BMW of Tyler, BMW of Beaumont, and Classic BMW—which are separate and apart from BMWNA. (Hernandez Decl. ¶ 8). The consuming public would not see a dealership without seeing the individual dealership's name.  Indeed, these dealerships in the District *are direct competitors,* because they are separate businesses. (Hernandez Decl. ¶ 11).

 Fourth, the Order *independently found* that one may use the "Search New Vehicle Inventory" feature on the www.bmwusa.com website, by use of a zip code search of 75701, and that the website displays BMWs in the District, which a user can reserve. (Dkt. No. 90 at 18–19). But, the "Search New Vehicle Inventory" feature displays vehicles available at third-party owned and operated dealerships, and as the Order recognizes, it is the non-BMWNA dealership that provides any consumer with the accurate quote for a given car. (Hernandez Decl. ¶¶ 15–18).

 Fifth, the Order *independently found* that the nomenclature "BMW Center" "further cements the impression by the consuming public that BMW's business is done at and through its dealerships[.]" (Dkt. No. 90 at 19 n.11). This is speculation, as there is no evidence or allegation in the record that, when consumers buy vehicles at dealerships in Texas, they believe they are doing business with a New Jersey-based distributor. Indeed, the term "BMW Center" refers to the

---



(Decl. of Lavenue, Ex. B; *see also* Exs. C, D (complete images of BMW dealerships)).

third-party owned and operated dealerships in the District, *not BMWNA*. (Hernandez Decl. ¶ 19).

Sixth, the Order *independently found*, again by speculation, that BMWNA "names and ratifies" BMW Centers as places of its business, by allowing users to schedule a test drive, contact a BMW Center, and request a quote via its website. (Dkt. No. 90 at 20). Yet, in all these instances, the Order fails to recognize that a user would be referred to a third-party dealership, and *BMWNA* itself does not itself operate any of those dealerships in the District. (Hernandez Decl. ¶¶ 15–19).

Seventh, the Order *independently found* that a user can prepare a custom build of a car using the "Build Your Own" feature on the www.bmwusa.com website and can then proceed to order the new vehicle via the BMW Center. (Dkt. No. 90 at 20). Further, the Court independently found that BMWNA goes "so far as to *solicit orders* on its own website for its BMW Centers." *Id.* But, the website refers any user in the District to multiple dealerships that compete with each other—and the dealerships are not owned or operated by BMWNA. (Hernandez Decl. ¶¶ 11, 20).

In sum, nothing in these Court-discovered fact findings requires upending "abundant case law" that a third-party owned dealership is not a place of the defendant, *EMED Techs.*, 2018 WL 2544564, at *2 (*see* n.5, supra), and relying on such fact finding to hold otherwise is clear error.

Finally, the Order also concludes that there is a separate and independent basis for finding venue, namely, that "BMWNA conducts its business of the provision of new purchase warranties and service pursuant to those warranties to the consuming public in this district through its authorized dealerships." (Dkt. No. 90 at 24).   Yet, Plaintiff did not make this argument, and moreover, the Order's conclusion is wrong, as maintaining an authorized warranty service, including repair and replacement of defective parts, is *not* a basis on which to conclude that a defendant owns a regular and established place of business in the District. The Order purports to find that BMWNA "conducts business" in Texas by citing the TOC, relating to the provision of

warranties. However, even if an entity *conducts business* at a place, such does not confer *ownership or control* of that place, as needed to support venue. (Decl. of Herring at ¶¶ 15–17); *see Dual Mfg. & Eng'g v. Burris Indus.*, 531 F.2d 1382, 1386–88 (7th Cir. 1976) (citing *Grantham*, 420 F.2d 1182, 1184–85 (7th Cir. 1969)). As such, offering a warranty for a product that is honored by a dealership does not convert a dealership into an established place of business of BMWNA. *Knapp-Monarch Co. v. Casco Prod. Corp.*, 342 F.2d 622, 625 (7th Cir. 1965) ("Similarly, the fact that Casco's warranties against defective products were honored by its dealers and its authorized repair station does not mean that the company had a regular and established place of business in Chicago. This activity, although concerned with Casco's products, was conducted at places of business which were independently operated."). Of note, even warranty-based repair work conducted at a dealership is not the *manufacturer's* opportunity to cure under Texas Lemon Laws, because a dealership and manufacturer remain separate entities. (Decl. of Herring at ¶¶ 8–17). As shown in the fact exhibit, and by the expert declaration on TOC, no allegation related to BMW warranties can turn third-party owned and operated dealerships in this District into "places of BMWNA." (Hernandez Decl. ¶¶ 21–23); (Exhibit A (Rebuttal Chart)); (Decl. of Herring at ¶¶ 8–17).

### 2. A third-party dealership is *not* a place of a separate defendant

It is black-letter law that corporations are considered to be separate and distinct entities, and courts must "start from the general rule that the corporate entity should be recognized and upheld, unless specific and unusual circumstances call for an exception." *Manville Sales Corp. v. Paramount Sys. Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990). The bulk of the case law prohibits using a third-party dealership to justify venue. *EMED Techs.*, 2018 WL 2544564, at *2 (*see* n.5, supra).

BMWNA complies with the Texas Occupations Code (TOC) prohibiting dealership ownership. (Hernandez Decl. ¶ 6). The policy behind the TOC is largely protective of dealerships and prevents them from having to compete with vertically-integrated manufacturers and

distributors. (Decl. of Herring at ¶ 10); *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 728 (5th Cir. 2004) (finding Texas could properly prohibit a truck manufacturer from operating a used-truck dealership). In *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493 (5th Cir. 2001), Ford was *prohibited* from selling cars directly to consumers as that would have violated the Code. (Decl. of Herring at ¶ 11). Here, BMWNA directs customers to independent dealerships in Texas to, among other things, schedule test drives and obtain quotes from vehicles. BMWNA is, according to the Code, *prohibited* from controlling (directly or indirectly) the dealership. (Decl. of Herring at ¶¶ 8–16). The Order clearly errs, as it is undisputed that BMWAG and BMWNA observe corporate formalities, and there is no suggestion that BMWNA uses dealerships as alter egos, for illegal purposes, or as shams to perpetrate fraud. (Hernandez Decl. ¶ 23); *see also Rimade Ltd. v. Hubbard Enterprises,* 388 F.3d 138, 143 (5th Cir. 2004) (listing what warrants veil piercing).

Indeed, as the Order recognized, the court in *West View Research, LLC v. BMW of North Am., LLC* refused to impute the locations of independent dealerships to BMWNA on almost identical facts. Case No. 16-CV-2590-JLS (AGS), 2018 WL 4367378 (S.D. Cal. Feb. 5, 2018). There, the court concluded that third-party owned and operated dealerships could not be used to establish venue over BMWNA, because BMWNA "and the dealerships are separate corporate entities." *Id.* at 15. Further, the *West View* court found "no facts to support collapsing the corporate forms; the dealerships' physical locations are not places of Defendants." *Id.* at 16.  The Order purports to distinguish *West View*, although agreeing that "there is not sufficient rationale to collapse the corporate forms of BMWNA and the dealerships." (Dkt. No. 90 at 25 n.15). Instead, the Order states that, because "dealerships constitute parts of a necessary distributorship which the law commands BMWNA adopt in order to conduct its business within the state of Texas; the business of BMWNA in Texas is necessarily done by and through its BMW Centers." *Id.* This

reasoning is not only circular but illogical; according to the Order, BMWNA controls the dealerships because Texas law mandates that BMWNA cannot control the dealerships. To approach the same issue differently, as Judge Bryson noted on a similar issue, the "'necessary distributor' theory makes no sense in light of the language and purpose underlying the patent venue statute, 28 U.S.C. § 1400(b)," and, therefore, "business necessity is insufficient to impute" a distributor's place of business to the defendant. *EMED*, 2018 WL2544564, at *3. Thus, the Order's adoption of the necessary distributor theory would, in effect, overturn the venue decisions in *TC Heartland* and *Cray*, converting the test for venue in patent cases from one of venue into one similar to the test for personal jurisdiction. *Id.* Thus, the Order makes a clear error of law by holding that independent third-party dealerships per se form venue-anchoring places of BMWNA.

### B.    The Court Clearly Erred By Finding Jurisdiction Over BMWAG

The Order relied on a stream-of-commerce theory to support jurisdiction over BMWAG. (Dkt. No. 90 at 3). Yet, the precise requirements of the stream-of-commerce theory of jurisdiction remain unsettled, and the question of whether mere placement into the stream of commerce is sufficient to establish jurisdiction, or whether intent that the products reach the forum is required, remains open. *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1381–82 (Fed. Cir. 2015).

Cases in this District and others cannot square with the holding that BMWAG's connections with this District establish jurisdiction. This District has found that the stream of commerce was *insufficient* to show that there would be have been jurisdiction, and therefore venue, in a proposed transferee forum. For example, in *NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, this Court found that there was no evidence of jurisdiction in California despite the defendant admitting that it sold its products nationally. Case No. 6:10-CV-229-JDL, 2010 WL 5068146, at *3 (E.D. Tex. Dec. 6, 2010). Crucial to the holding was the defendant, like BMWAG here, "had no offices, facilities, distribution facilities, or employees" in the district. *Id.* Likewise,

in *Motion Games, LLC v. Nintendo Co., Ltd.*, the Eastern District of Texas found the presence of retail stores (analogous to the third-party dealerships) in a forum was not sufficient to show jurisdiction over the parent corporate entities, because the retail stores are separately operated: "Defendants merely speculate that Rent-A-Center West, Inc. and GameStop Inc. are equivalent to their respective parents for purposes of personal jurisdiction analysis, without any supporting evidence." Case No. 6:12-CV-878-LED-JDL, 2014 WL 11621698 at *3 (E.D. Tex. March 28, 2014). There is no evidence here that the independent BMW dealers are equivalent to BMWAG.

Of note, this Court has specifically found jurisdiction lacking in a proposed transferee forum, despite the fact that the defendant had sold products in that district through distributors:

> Exedea did not "purposefully" direct its activities to the residents of [the transferee district] . . . [because] Exedea's "services" consisted of simply signing for . . . phones when they arrived in the United States and verifying shipping information. Exedea never transmitted instructions . . . concerning shipments of products to Washington and had no role in determining where or to whom the product would be shipped after it arrived at Brightpoint in Indiana. Exedea never sold [the] phones to end users in Washington, never conducted marketing activities or solicited business in Washington, and never travelled to Washington to sell products. [So, therefore] [b]ecause Exedea never purposefully directed its activities toward anyone in Washington, there is no specific jurisdiction over Exedea in Washington.

*Wi-Lan, Inc. v. HTC Corp.*, Case No. 2:11-CV-68-JRG, 2012 WL 2461112, at *2 (E.D. Tex. June 27, 2012) (citations omitted). Just as in *Wi-Lan*, there is no evidence that BMWAG has ever transmitted instructions to the third-party dealerships or that BMWAG has any role in determining where or to whom BMW products would be shipped, after BMWAG transfers ownership. Indeed, BMWAG does not sell any vehicles in Texas; instead, vehicles of BMWAG are transferred to BMWNA outside of the District. (Dkt. 60, Schäck & Göbel Decl. ¶¶ 4,9). Moreover, BMWAG transfers vehicles to BMWNA for nationwide distribution; it does not produce or transfer vehicles

specifically for Texas customers. *See id.* Likewise, BMWAG does not develop or produce any vehicles in the District (Dkt. 60, Schäck & Göbel Decl. ¶ 7; Dkt. 60, Hernandez Decl. ¶¶ 4, 6), and the accused Infotainment Systems are not designed, developed, or manufactured in Texas (Dkt. 60, Schäck & Göbel Decl. ¶¶ 8). There simply cannot be jurisdiction over BMWAG on this record.

This Court's exercise of jurisdiction is also at odds with recent Supreme Court precedent reigning in personal jurisdiction. For example, in *Daimler AG v. Bauman*, the Court limited general jurisdiction to places where a foreign entity is "at home." 571 U.S. 117, 122 (2014). In the same year, in *Walden v. Fiore*, the Court emphasized that jurisdiction must be based on contacts that the "defendant *himself*" creates with the forum State. 571 U.S. 277, 284 (2014) (emphasis in original) (citations omitted). Extending *Walden* in *Bristol-Meyers Squibb Co. v. Sup. Ct. of CA*, the Court found no specific personal jurisdiction where the plaintiffs were not in-state residents, holding that the "bare fact that the [defendant] contracted with a California distributor is not enough to establish personal jurisdiction in the State." 137 S. Ct. 1773, 1783 (2017). Thus, this trend of cases, which reign in personal jurisdiction, cannot be squared with the Order—a ruling that supports personal jurisdiction over *any company* that puts *any item* into a distribution channel, so long as that item eventually reaches Texas. BMWAG's attenuated connection to Texas cannot support jurisdiction.

## V.    CONCLUSION: THE COURT SHOULD RECONSIDER ITS ORDER

The Court should reconsider its Order because it has wide-ranging consequences for dealerships, manufacturers, and distributors.  The Order ignores a dealership's property rights and improperly attributes the right of control and possession of a corporate entity. *See U.S. v. Gen. Motors Corp.*, 323 U.S. 372, 378 (1945) (explaining that the "group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it"). If the Order stands, it could create a host of unintended property, tax, regulatory, and contractual consequences.

Respectfully submitted,

Dated: September 20, 2018

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:      (202) 408-4400

ATTORNEY FOR DEFENDANTS
BAYERISCHE MOTOREN WERKE AG, AND
BMW OF NORTH AMERICA, LLC

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") all counsel of record who have appeared in this case.  I also caused the documents above to be sent to all counsel of record via electronic mail.

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:     (202) 408-4400

ATTORNEY FOR DEFENDANTS
BAYERISCHE MOTOREN WERKE AG, AND
BMW OF NORTH AMERICA, LLC