**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **BLITZSAFE TEXAS, LLC,** | ) | |
| | ) | |
| | ) | Case No. 2:17-CV-00418-JRG |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **BAYERISCHE MOTOREN WERKE AG** | ) | |
| **AND BMW OF NORTH AMERICA,** | ) | |
| **LLC,** | ) | |
| | | |
| *Defendants*. | | |

**DEFENDANTS BAYERISCHE MOTOREN WERKE AG'S AND BMW OF NORTH
AMERICA, LLC'S OPPOSITION TO PLAINTIFF BLITZSAFE TEXAS, LLC'S
OPPOSED MOTION FOR VENUE DISCOVERY**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION:  LATE DISCOVERY CANNOT ESTABLISH VENUE .................. 1

II.    BLITZSAFE SEEKS VENUE DISCOVERY FOR THE FIRST TIME IN TWO
       YEARS TO EITHER DELAY A RULING ON BMWNA'S MOTION FOR
       RECONSIDERATION AND/OR TO ANGLE FOR A NONEXISTENT FISH.............. 2

III.   BMWNA DOES NOT AND CANNOT OWN, CONTROL, OR "RATIFY"
       DEALERSHIPS IN TEXAS UNDER THE TEXAS OCCUPATIONS CODE ............... 3

IV.    COURTS DO NOT ORDER DISCOVERY, WHEN FUTILE TO SHOW
       VENUE ......................................................................................................................... 9

V.     CONCLUSION............................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AGIS Software Development, LLC v. ZTE Corp.*,
  Case No. 2:17-CV-00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018)......................9

*Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*,
  No. 5:14-cv-2022, 2018 WL 400326 (N.D. Ohio Jan. 12, 2018) ...........................................10

*Board of Regents v. Medtronic PLC*,
  Case No. A-17-CV-0942-LY, 2018 WL 4179080 (W.D. Tex. July 19, 2018)
  (Yeakel, J.)...............................................................................................................11, 12

*Boston Sci.. Corp. v. Cook Grp. Inc.*,
  269 F. Supp. 3d 229 (D. Del. 2017)......................................................................................10

*Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*,
  No. 17-cv-379, 2017 WL 3980155 (D. Del. Sept. 11, 2017)...................................................10

*Cannon Manufacturing Co. v. Cudahy Packing Co.*,
  267 U.S. 333 (1925) (Brandeis, J.) .......................................................................................11

*CAO Lighting, Inc. v. Light Efficient Design*,
  No. 4:16-cv-00482, 2017 WL 4556717 (D. Idaho Oct. 11, 2017) ..........................................10

*Chicky Tackle, LLC v. Vallentine*,
  Case No. 6:18-CV_00063-RWS, 2018 WL 4286186 (E.D. Tex. Sept. 7, 2018)
  (Shroeder, J.).........................................................................................................................9

*In re Cray*,
  871 F.3d 1355 (Fed. Cir. 2017)..........................................................................................7, 10

*Cupp Cybersecurity LLC v. Symantec Corp.*,
  Case No. 3:18-CV-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019)
  (Lynn, C.J.) ...........................................................................................................................9

*Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*,
  531 F.2d 1382 (7th Cir. 1976) ..............................................................................................10

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
  No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018)
  (Bryson, J.).......................................................................................................................2, 9

*Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*,
  No. 17-cv-01803, 2017 WL 4155347 (N.D. Cal. Aug. 29, 2017) ...........................................10

*Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*,
  290 F. Supp. 3d 599 (N.D. Tex. 2017) ...................................................................10

*Grantham v. Challenge-Cook Bros.*,
  420 F.2d 1182 (7th Cir. 1969) ...............................................................................11

*Hildebrand v. Wilmar Corp.*,
  No. 17-cv-02821, 2018 WL 1535505 (D. Colo. Mar. 29, 2018) ...........................10

*Interactive Toybox v. Walt Disney Co.*,
  Case No. 1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018)..........9

*JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*,
  No. 3:16-cv-03153, 2017 WL 4512501 (M.D. Tenn. Oct. 10, 2017)......................10

*Kabb, Inc. v. Sutera*,
  No. 91-cv-3551, 1992 WL 245546, at *2 (N.D. Tex. Sept. 4, 1992) .....................10

*LoganTree LP v. Garmin Int'l, Inc.*,
  No. SA-17-CA-0098, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) ..........10

*OptoLum, Inc. v. Cree, Inc.*,
  No. 16-cv-03828, 2017 WL 3130642 (D. Ariz. July 24, 2017)..............................10

*Patent Holder LLC v. Lone Wolf Distributors, Inc.*,
  No. 17-23060-CIV, 2017 WL 5032989 (S.D. Fla. Nov. 1, 2017) ..........................10

*Post Consumer Brands, LLC v. General Mills, Inc.*,
  No. 4:17-CV-2471-SNLJ, 2017 WL 4865936, at *2 (E.D. Mo. Oct. 27, 2017) ..............11, 12

*Reflection, LLC v. Spire Collective LLC*,
  No. 17-cv-1603, 2018 WL 310184 (S.D. Cal. Jan. 5, 2018) ..................................10

*Soverain IP, LLC v. AT&T, Inc.*,
  No. 2:17-cv-293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017)............................10

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
  282 F. Supp. 3d 916 (E.D. Va. 2017) ...............................................................9, 11

*Talsk Research Inc. v. Evernote Corp.*,
  No. 16-cv-2167, 2017 WL 4269004 (N.D. Ill. Sept. 26, 2017)..............................10

*TC Heartland LLC, v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017)...............................................................................................2

*Wet Sounds, Inc. v. PowerBass USA, Inc.*,
  No. CV H-17-3258, 2018 WL 1811354 (S.D. Tex. Apr. 17, 2018) .......................10

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018)..................................................................3

**State Cases**

*Buddy Gregg Motor Homes, Inc. v. Marathon Coach, Inc.*,
   320 S.W. 3d 912 (Tex. App. 2010)..........................................................5

*Ford Motor Co. v. Miles*,
   967 S.W.2d 377 (Tex. 1998)..............................................................4, 5

*General Motors Corp. v. Washington*,
   559 S.W.2d 425 (Tex. Civ. App. 1977)..................................................4, 5

**Federal Statutes**

28 U.S.C. § 1400(b) ..............................................................................4, 10

**State Statutes**

Texas Occupations Code § 2301.354.............................................................5, 6

Texas Occupations Code § 2301.362 (a) .........................................................4

Texas Occupations Code § 2301.401–406 .......................................................5

Texas Occupations Code § 2301.402...............................................................6

Texas Occupations Code § 2301.404...............................................................7

Texas Occupations Code § 2301.453(a) ...........................................................8

43 Texas Administrative Code § 215.140.........................................................6

## I.    INTRODUCTION:  LATE DISCOVERY CANNOT ESTABLISH VENUE

Recognizing that its initial pleadings cannot make out a case of venue against BMW of North America, LLC ("BMWNA"), Plaintiff Blitzsafe Texas, LLC ("Blitzsafe") now, two years after filing its initial complaint, seeks venue related discovery.  Blitzsafe's belated motion should be denied because it seeks discovery on topics that cannot possibly establish that BMWNA has a regular and established place of business in this District and that Blitzsafe has made no attempt to collect in the six months of open discovery since this Court lifted the stay on October 17, 2018.

After Blitzsafe failed to make out its case that the Eastern District of Texas is the appropriate venue for this case, the September 6, 2018 Order (Dkt. 90, the "Order") took judicial notice of several items to support its venue conclusion.  As explained in BMWNA's Motion for Reconsideration, and as outlined in the *unrebutted* expert testimony (Dkt. 94), the Order incorrectly imputed the location of third-party corporations (in-district dealerships) to BMWNA (a New Jersey distribution company).  The legally impermissible imputations are uniquely highlighted here, as Texas law expressly prohibits automobile distribution companies like BMWNA from owning or controlling, directly or indirectly, the activities of independently owned and operated dealerships.

Venue discovery will do nothing more than to confirm that BMWNA does not own or control, either directly or indirectly, the activities of the local BMW automotive dealerships, and therefore, the belated request should be denied.  It is also unclear what relevance Blitzsafe's requested discovery will have on the present proceedings—the Order found venue was appropriate and BMWNA's Motion for Reconsideration of the Order has been fully briefed and argued without Blitzsafe seeking or requesting additional venue discovery, even when expressly prompted by the Court at the hearing.  BMWNA's Motion for Reconsideration is therefore ready for decision given the applicable "abundant" case law holding that, absent a showing that corporations lack formal

separateness (of which there are no allegations here), one corporation's activities cannot be imputed to another for venue purposes. *See, e.g.*, *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564 (E.D. Tex. June 4, 2018) (Bryson, J.).

## II. BLITZSAFE SEEKS VENUE DISCOVERY FOR THE FIRST TIME IN TWO YEARS TO EITHER DELAY A RULING ON BMWNA'S MOTION FOR RECONSIDERATION AND/OR TO ANGLE FOR A NONEXISTENT FISH

Blitzsafe filed its original Complaint two years ago. (Dkt. 1, May 11, 2017). Two weeks later, on May 22, 2017, the Supreme Court issued its decision in *TC Heartland LLC, v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1516 (2017) changing the law on patent venue. Shortly thereafter, BMWNA, Bayerische Motoren Werke AG ("BMWAG"), and then-party BMW Manufacturing Co. ("BMWMC") moved dismiss. (Dkt. 30, Aug. 28, 2017). Implicitly recognizing this change in law, Blitzsafe filed an Amended Complaint, dropping South Carolina-based BMWMC. (Dkt. 39, Sept. 18, 2017). BMWNA and BMWAG renewed their motion to dismiss (Dkt. 60, Oct. 16, 2017), maintaining the position that BMWNA has no place of business in the Eastern District of Texas. Recognizing that BMWNA has no place of business of its own in the Eastern District of Texas, the Court's September 6, 2018 Order (Dkt. 90) (the "Order") took judicial notice of certain facts, some not pleaded in Blitzsafe's Original or Amended Complaints, and held that BMWNA had "ratified" the locations of non-party separate corporations (the in-district dealerships) despite finding that "there is not sufficient rationale to collapse the corporate forms of BMWNA and the dealerships." Dkt. 90 at 25 n.15.

It is now May 2019, and Blitzsafe has long ago waived the right to seek venue discovery. At no point in the past two years has Blitzsafe subpoenaed BMWNA witnesses,[1] any third-party

---

[1] Blitzsafe incorrectly alleges that BMWNA relied on the declaration of "BMWNA employee" Sherry McCraw in support of its motion to dismiss. *See* Dkt. 115 at 3. Ms. McCraw is an employee of non-party BMWMC, *not* BMWNA. Blitzsafe cites to no facts to justify its extreme tardiness.

dealerships for venue-related depositions, or BMWNA's subject-matter expert, Kenneth Herring. Only now, after BMWNA's Motion for Reconsideration made clear that BMWNA cannot own, control, or "ratify" the dealerships, did Blitzsafe file this motion seeking venue related discovery in order to delay a ruling on BMWNA's Motion for Reconsideration.  If this were a legitimate request, and not merely a delay tactic or fishing expedition, Blitzsafe would have pursued venue related discovery at the outset of the case,[2] or, at least when the Federal Circuit clarified that it was Blitzsafe's burden to establish that venue was appropriate.  *See In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).  Having failed to do so, Blitzsafe should not now be able to belatedly burden the Court and BMWNA with a futile discovery motion.

### III.   BMWNA DOES NOT AND CANNOT OWN, CONTROL, OR "RATIFY" DEALERSHIPS IN TEXAS UNDER THE TEXAS OCCUPATIONS CODE

As explained in detail in the Motion for Reconsideration, no findings in the Order establish that BMWNA owns, controls, or "ratifies" the in-district dealerships under the law.[3]  Texas Occupations Code ("TOC") and distributor-dealer relationship expert Kenneth Herring, Esq., has

---

[2] Notably, Blitzsafe ostensibly requested venue discovery in its Opposition to BMW's Motion to Dismiss (*see* Dkt. 66, at 19 n.4), and BMW explained then that it was unnecessary (*see* Dkt. 69 at 10).  The Order does not address venue discovery, but had Blitzsafe been serious about its request at the time, it had six months of open discovery since the Court lifted the stay in October 2018 to pursue any of the information it now requests.  Blitzsafe sought none of it until now, suggesting that this belated request may have a dilatory motive.

[3] During argument on BMW's Motion for Reconsideration, the Court asked if it made any findings of fact with which Defendants disagreed.  *See* Ex. A (Apr. 30, 2019 Hr. Tr.) at 4:12-24; 30:12-17; 31:8-11. BMW responded that it objected to fact finding to which it had no opportunity to respond (other than reconsideration), but nevertheless that no fact findings support venue because the place of business of one corporate cannot be imputed to another for venue purposes under the clear weight of the law, absent veil-piercing.  *See id.* at 31:2-15.  However, in view of the Court's inquiry, Mr. Herring has now reviewed each of the 42 fact findings in the Order, and it is now respectfully submitted that 28 of the 42 fact findings in the Order were incorrect in view of the provisions and prohibitions of the TOC, and the reasons are provided in Exhibit 1 to Mr. Herring's Declaration submitted herewith.

also reviewed the findings in the Order and found that under the TOC, none can establish that BMWNA owns, controls, or "ratifies" the dealerships in Texas.  Decl. of Herring at ¶ 9.[4]  In summary, there is no evidence of venue, and state law precludes it.[5]

As to "ratification," there are countless examples showing that the Order's conclusion cannot be correct in view of the TOC.  For example, the Order concludes that "BMWNA does not permit sales of any new BMW vehicle from any location *except* authorized dealers, such as the BMW Centers found within this district."  Dkt. 90 at 15.  It is the *TOC*, not merely BMWNA, that does not permit sales of any new motor vehicle from any location except licensed franchised dealers.  Decl. of Herring, Ex. 1 at 2–3; TOC § 2301.362 (a) ("Except as provided by Subsections (b) and (c) and Sections 2301.358(c) and (d), a dealer may only sell or offer to sell a motor vehicle from an established and permanent place of business (1) that is approved by the division; and (2) for which a general distinguishing number has been issued.").

As another example, the Order concludes that the "dealerships are *named* 'BMW' (for example, BMW of Tyler, BMW of Beaumont, Classic BMW (located in Plano)) and referred to by BMWNA as 'BMW Centers.'"  Dkt. 90 at 15–16.  And, the Order concludes that the dealerships prominently display BMW logos.  Dkt. 90 at 16.  But, the TOC mandates that a franchised dealer may not operate without appropriate signs that are easily visible to the public and that identify the dealer's place of business and the products the dealer offers for sale, so such "BMW signs" are

---

[4] Mr. Herring's expert opinions, submitted with the Motion for Reconsideration, are unrebutted.

[5] *See Ford Motor Co. v. Miles*, 967 S.W.2d 377, 380-82 (Tex. 1998) (recounting well-established Texas case law to support a finding that that local Ford dealers—even those performing warranty work—are not controlled the national distributor for the purposes of a state law venue statute more broadly worded than § 1400(b), which allowed venue wherever and out-of-state corporation had "an agency or representative"); *General Motors Corp. v. Washington*, 559 S.W.2d 425, 428 (Tex. Civ. App. 1977) (finding that warranty service performed by GM dealers did not establish that national distributor had local agent or representative needed to establish venue under state law).

required by state law. Decl. of Herring, Ex. 1 at 3–5; TOC § 2301.354.  In another example, the Order concludes that the "BMW, through its franchised dealers, sells BMW cars to said consuming public."  Dkt. 90 at 16.  But the TOC and Texas law prohibits "vertical integration" of motor vehicle "dealers" and "manufacturers." Decl. of Herring, Ex. 1 at 6; TOC § 2301.354; *Buddy Gregg Motor Homes, Inc. v. Marathon Coach, Inc.*, 320 S.W. 3d 912 (Tex. App. 2010).

The Order makes other findings relating to warranties, attempting to show that BMWNA conducts its business through the dealerships.  Dkt. 90 at 21–24.  But BMWNA, pursuant to the TOC, provides reimbursement of warranty work conducted at the dealership via arm's length transactions.[6]  It is not BMWNA that exerts control over the process—it is the Texas DMV by design.  Decl. of Herring, Ex. 1 at 15–21; TOC § 2301.401–406.  For every finding the Order makes relating to ratification, the TOC expressly prohibits BMWNA from exerting such control.

At the April 30, 2019 hearing, it is respectfully noted that the Court also raised a number of hypotheticals, all relating to the level of control that BMWNA may exert over the dealerships:

- Dealer charging distributor $50,000 for $500 worth of warranty repair (*see* Ex. A at 13:2–9);
- Dealer changing the color of BMW sign to from blue to pink (*see* Ex. A at 20:6–12);
- Dealer adding another product to the dealership and displaying different vehicles alternately (*see* Ex. A at 20:20–21:2);
- Dealer repairing a vehicle with after-market parts (*see* Ex. A at 12:13–16).

Each example, however, illuminates and illustrates that Texas law (the TOC) prohibits the exact type of control that would allow BMWNA to "ratify" the dealerships' locations.  In fact, the TOC

---

[6] Moreover, under Texas law, a dealership performing warranty work does not even establish it as an agency or representative of a national distributor, let alone a regular and established place of business *of the distributor*. *See Ford Motor Co. v. Miles*, 967 S.W.2d at 380-82; *General Motors Corp.*, 559 S.W.2d at 428.

and agency rules specifically govern the dealerships regarding warranty work compensation,[7] signage,[8] and multiple franchises located at the same location.[9] Decl. of Herring at ¶¶ 11–13. BMWNA does not have and cannot have that control.   Instead, in each of the first three hypothetical situations (unreasonable warranty amount charged, improper signage, or additional vehicles sold on-premises without authorization), the Enforcement Division of Texas Department

---

[7] *See* TOC § 2301.402:

(a) A manufacturer or distributor shall fairly and adequately compensate its dealers for warranty work.

(b) A manufacturer or distributor may not pay or reimburse a dealers an amount of money for warranty work that is less than the amount the dealer charges a retail customer for similar nonwarranty work.

(c) In computing the amount of money a dealers charges a retail customer under Subsection (b), the manufacturer or distributor shall use the greater of:

(1) the average labor rate charged during the preceding six months by the dealer on 100 sequential nonwarranty repair orders, exclusive of routine maintenance; or

(2) the average labor rate charged for 90 consecutive days during the preceding six months by the dealer for nonwarranty repairs, exclusive of routine maintenance.

[8] *See* TOC § 2301.354:

(a) A franchised dealer may not operate without appropriate signs that:

(1) are readily and easily visible to the public; and

(2) identify the dealer's place of business and the products the dealer offers for sale.

(b) To the extent of a control between this section and another law, including an ordinance, this section prevails.

(c) If a dispute arises under this section:

(1) the board has exclusive jurisdiction to determine whether a sign complies with this section; and

(2) the board shall uphold an ordinance of a home-rule municipality and protect a franchised dealer from retribution by a manufacturer or distributor for complying the with ordinance.

[9] *See* 43 Texas Administrative Code § 215.140 ("A dealer must meet the following requirements at each licensed location and maintain the requirements during the term of the license.  If multiple dealers are licensed at a location, each dealer must maintain the following requirements during the entire term of the license.")

of Motor vehicles would intervene to address failure to comply with Texas Code provisions.  Decl. of Herring at ¶ 14.

Regarding the method of repairs used by the dealer (e.g., using after-market parts for repair), the TOC controls as well.  Decl. of Herring at ¶ 15.  If BMWNA determined it would not pay for warranty work made with after-market parts, then a dealer could protest BMWNA's failure to reimburse an invoice, and ultimately, the TXDMV Board would decide if using an after-market part constituted an improper repair.[10]  Decl. of Herring at ¶ 15.  But, the TOC controls (not BMWNA).

Another feature of the TOC is that a distributor like BMWNA is not permitted to unilaterally, or in its sole discretion, terminate a franchised dealership.  Decl. of Herring at ¶ 16. In *In re Cray*, 871 F.3d 1355 (Fed. Cir. 2017), there was no question that the employer controlled the employee, so the issue of "ratification" related to an employer being able to potentially "ratify" the home office of an employee (whom it controlled) as a place of business of its own.  One major distinction between that scenario and BMWNA is that the defendant-employer in *Cray* could terminate the employee's employment, thus ending any alleged "ratification."  Here, BMWNA lacks such ability.  Even when faced with an absolute unequivocal violation of a franchise agreement, a distributor in Texas (per Texas state law, in the TOC) may not terminate or discontinue a franchise, unless the distributor provides notice of the termination and (1) receives

---

[10] *See* TOC § 2301.404:

(a) a manufacturer or distributor shall pay a dealer's claim for reimbursement for warranty work or dealer preparation and delivery work not later than the 30th day after the date of approval of the claim.

(b) A claim that is not disapproved before the 31st day after the date of receipt is considered approved.

(c) If a claim is disapproved, the manufacturer or distributor shall provide the dealer written notice of the reasons for the disapproval.

7

the dealer's informed written consent; (2) the appropriate time for the dealer to file a protest has expired; or (3) the Board at the Texas Department of Motor (the TXDMV Board) vehicles makes a determination of good cause.  Further, before any such termination is possible, notice must: (1) be received not later than the 60th day before the effective date of the termination;  and (2)  contain on its first page a conspicuous statement that reads:  "NOTICE TO DEALER:  YOU MAY BE ENTITLED TO FILE A PROTEST WITH THE TEXAS MOTOR VEHICLE BOARD IN AUSTIN, TEXAS, AND HAVE A HEARING IN WHICH YOU MAY PROTEST THE PROPOSED TERMINATION OR DISCONTINUANCE OF YOUR FRANCHISE UNDER THE TERMS OF CHAPTER 2301, OCCUPATIONS CODE, IF YOU OPPOSE THIS ACTION."[11] Decl. of Herring at ¶ 17.  If a protest is filed, the TXDMV Board determines whether the distributor has established, by a preponderance of the evidence, that there is good cause for a termination. Decl. of Herring at ¶ 18.  Further, throughout this period of review, the dealer at issue remains an operating licensed franchised dealer, until the Board resolves the issue.  Decl. of Herring at ¶ 18. On average, the time from protest to Board action is two to three years.  Decl. of Herring at ¶ 18.

Accordingly, given the legal stricture under which dealerships are protected by the TOC, no discovery is needed to elicit facts about the relationship between BMWNA and the dealerships

---

[11] *See* TOC § 2301.453(a):

Notwithstanding the terms of any franchise, a manufacturer, distributor, or representative may not terminate or discontinue a franchise with a franchised dealer or directly or indirectly force or attempt to force a franchised dealer to relocate or discontinue a line-make or parts or products related to that line-make unless the manufacturer, distributor, or representative provides notice of the termination or discontinuance as required by Subsection (c) and:

    (1) the manufacturer, distributor, or representative receives the dealer's informed written consent;

    (2) the appropriate time for the dealer to file a protest under Subsection (e) has expired; or

    (3) the board makes a determination of good cause under Subsection (g).

because no facts can establish venue.  In all senses, BMWNA and the dealerships are separate corporate entities that are not even in the same corporate family.

## IV.    COURTS DO NOT ORDER DISCOVERY, WHEN FUTILE TO SHOW VENUE

Courts do not order venue discovery, when doing so would be futile to establish venue. *See, e.g.*, *Chicky Tackle, LLC v. Vallentine*, Case No. 6:18-CV_00063-RWS, 2018 WL 4286186, at *6 (E.D. Tex. Sept. 7, 2018) (Shroeder, J.) (denying request for venue discovery, where plaintiff failed to show how venue-related discovery would cure defects in venue).  In *Cupp Cybersecurity LLC v. Symantec Corp.*, defendant Symantec did not dispute that its servers were housed in the district and that it did not reimburse any employees for home offices.  *Cupp Cybersecurity LLC v. Symantec Corp.*, Case No. 3:18-CV-01554-M, 2019 WL 1070869, at *5 (N.D. Tex. Jan. 16, 2019) (Lynn, C.J.). Noting that these facts were insufficient to establish patent venue, the court denied a request for additional discovery, because plaintiff failed to explain "why further discovery has any reasonable prospect of leading to" information that would establish venue.  *Id.*; *see also AGIS Software Development, LLC v. ZTE Corp.*, Case No. 2:17-CV-00517-JRG, 2018 WL 4854023, at *3 n.3 (E.D. Tex. Sept. 28, 2018) (denying request for venue-related discovery, holding that the "Court will entertain motions for venue discovery where the plaintiff demonstrates that discovery **could or will be useful in addressing the issue of venue** . . .") (emphasis added).

The law is quite clear that courts (including the courts of this District) do not impute the location of one corporate entity to another for venue purposes, if the entities maintain formal separateness as BMWNA and the dealerships do here (the Order in this case being the only exception to this general rule of law).  *EMED Techs* 2018 WL 2544564, at *2 (collecting cases);[12]

---

[12] *See Interactive Toybox v. Walt Disney Co.*, Case No. 1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) (not imputing retail Disney stores to parent Disney company for venue purposes); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916 (E.D. Va. 2017)

(not imputing retail Lego stores to parent Lego company for venue purposes); *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted* 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017); *Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. CV H-17-3258, 2018 WL 1811354, at *2 (S.D. Tex. Apr. 17, 2018) (third-party distribution centers insufficient); *Hildebrand v. Wilmar Corp.*, No. 17-cv-02821, 2018 WL 1535505, at *3 (D. Colo. Mar. 29, 2018) (no venue where "the places of business on which Mr. Hildebrand bases venue are the physical locations of Wilmar's distributors, not those of Wilmar"); *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*, No. 5:14-cv-2022, 2018 WL 400326, at *9 n.8 (N.D. Ohio Jan. 12, 2018) ("While APS maintains that FPI has a close relationship with its distributors, this is still insufficient to establish that FPI has a regular and established business in the district, as any such physical presence of the distributor belongs to the distributor and not FPI."); *Reflection, LLC v. Spire Collective LLC*, No. 17-cv-1603, 2018 WL 310184, at *3 (S.D. Cal. Jan. 5, 2018) ("[A] distributor or subsidiary of a parent corporation selling the infringer's product does not demonstrate that a defendant has a regular and established business in this district."); *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 611 (N.D. Tex. 2017) (presence of third-party sales representatives insufficient); *Patent Holder LLC v. Lone Wolf Distributors, Inc.*, No. 17-23060-CIV, 2017 WL 5032989, at *6 (S.D. Fla. Nov. 1, 2017) (physical locations of defendant's dealers in the district "are irrelevant to the Court's analysis under § 1400(b)"); *CAO Lighting, Inc. v. Light Efficient Design*, No. 4:16-cv-00482, 2017 WL 4556717, at *3 (D. Idaho Oct. 11, 2017) (holding that physical location of distributors does not establish venue because the defendant "does not own, rent, lease, or occupy these locations or any other property or equipment in the state"); *JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*, No. 3:16-cv-03153, 2017 WL 4512501, at *3 (M.D. Tenn. Oct. 10, 2017) (holding that "business connections with distributors, retailers, and consumers in this district" insufficient; *Talsk Research Inc. v. Evernote Corp.*, No. 16-cv-2167, 2017 WL 4269004, at *4 (N.D. Ill. Sept. 26, 2017) ("The Federal Circuit's decision in *Cray* leaves no room for Plaintiff to argue that the handful of non-employee, independent contractors present in this District constitute a 'regular and established place of business' for Defendant within the meaning of § 1400(b)."); *Boston Sci.. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 248 (D. Del. 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, No. 17-cv-379, 2017 WL 3980155, at *17 (D. Del. Sept. 11, 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); *Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*, No. 17-cv-01803, 2017 WL 4155347, at *7 (N.D. Cal. Aug. 29, 2017) (using third-party company to sell products is insufficient); *OptoLum, Inc. v. Cree, Inc.*, No. 16-cv-03828, 2017 WL 3130642, at *6 (D. Ariz. July 24, 2017) (selling infringing products at Home Depot stores in the district does not establish a place of business for the manufacturer); *LoganTree LP v. Garmin Int'l, Inc.*, No. SA-17-CA-0098, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) ("It is well settled that the mere presence of independent sales representatives does not constitute a 'regular and established place of business' for purposes of Section 1400(b)." (quoting *Kabb, Inc. v. Sutera*, No. 91-cv-3551, 1992 WL 245546, at *2 (N.D. Tex. Sept. 4, 1992))); *see also Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*, 531 F.2d 1382, 1387 (7th Cir. 1976) ("In these cases we found venue improper in the subject district even though

*see also Symbology Innovations, LLC v. Lego Sys.*, Inc., 282 F. Supp. 3d 916, 931–33 (E.D. Va. 2017) (finding that *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 334-35 (1925) (Brandeis, J.) "held that even where the parent corporation controls a subsidiary's operations and the companies share a unitary business purpose, the subsidiary's presence in the forum cannot be imputed to the parent company so long as they maintain formal corporate separateness" and that "the venue question is controlled by *Cannon* . . .".) (additional citations omitted).

Instructive on this issue (that is, the imputation of the location of one corporate entity to another for venue purposes) is the decision in *Board of Regents v. Medtronic PLC*, Case No. A-17-CV-0942-LY, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (Yeakel, J.).[13]  Initially, the court there found that defendant Medtronic had "ratified" in-district locations by listing the place of business on Medtronic's website, and in telephone and web-based directories, and placing a Medtronic sign on the exterior of the building.  *Id.* at *2.  On motion for reconsideration, the court found, on reconsideration of its initial findings, that Medtronic in fact had **not ratified** any of the in-district locations, because the different Medtronic entities maintained corporate formalities:

> Except where corporate formalities are ignored and alter ego relationship exists, the presence of a corporate relative in the district does not establish venue over another separate and distinct corporate relative.  *See, e.g.*, *Post Consumer Brands, LLC v. General Mills, Inc.*, No. 4:17-CV-2471-SNLJ, 2017 WL 4865936, at *2 (E.D. Mo.

defendant's activities in the district included one or more of the following: maintaining an exclusive distributorship; establishing and maintaining some control over a chain of exclusive, independent distributors; maintaining an independent business man as a sales representative on a commission basis...." (quoting *Grantham v. Challenge-Cook Bros.*, 420 F.2d 1182, 1184–85 (7th Cir. 1969))).  Case law to the contrary has not been found, nor has Blitzsafe cited any.

[13] Blitzsafe filed a Notice of Supplemental Authority, alerting the Court to the *original* decision in this case, where venue was found.  (Dkt. 88).  The Western District of Texas reconsidered the decision on July 19, 2018.  However, and of note, Blitzsafe did not cite the original or reconsidered decision in its opposition to BMWNA's and BMWAG's Motion for Reconsideration, and Blitzsafe has never advised the Court that the original ruling had changed.

Oct. 27, 2017).  The court finds nothing in the case file that reflects anything other than that these three companies—Medtronic, Inc., Medtronic MiniMed, Inc., and its subsidiary MiniMed Distribution Corp.—are anything other than three separate corporate entities that maintain their corporate separateness.  Further, nothing before the court reflects that Medtronic, Inc. has in any manner ratified the San Antonio building as a regular and established place for its business in this district.  The court finds that the use of the common or generic name Medtronic on the exterior of the building, as well as the press releases announcing the business to be conducted in the district by Medtronic MiniMed, Inc., and its subsidiary MiniMed Distribution Corp., which are separate and distinct corporate entities, are insufficient to establish that venue in this district is proper for the Board's claims alleged against Medtronic, Inc. in this action.

*Id.*  BMWNA's connection to the in-district dealerships is even more attenuated than Medtronic's, because there, the companies were in the same corporate family,—here, in contrast, the dealerships are true third parties to BMWNA.  The *Medtronic* court concluded that, absent maintaining corporate separateness, venue from one corporation cannot be imputed to another.  Therefore, if the *Medtronic* court was correct on the venue reconsideration as to the connection between Medtronic and some of its subsidiaries, given the corporate distinctiveness and separateness within the corporate Medtronic family, then it should be beyond cavil and beyond dispute that separate-company dealerships in Texas cannot impute venue to separate BMWNA.

In summary on the issue of futileness of venue discovery, there is no fact that Blitzsafe could possibly elicit that would establish venue, given that the Court has already ruled that there is no basis to pierce the corporate veil between the dealerships and BMWNA.  Dkt. 90 at 25 n.15.  And, if there was any confusion on the facts, the TOC fills in all gaps by explaining in detail that dealerships in Texas retain exclusive control over their business operations.  Given the state of the law and how developed the venue record already is, the Court should deny Blitzsafe's late motion.

12

## V.     CONCLUSION

For the reasons outlined at the April 30, 2019 hearing, the Court can narrowly decide the venue issues in this case, by determining that, as a unique feature of Texas law, automobile distributors like BMWNA are *prohibited* from owning, controlling, or "ratifying" in-district dealerships.  Accordingly, BMWNA respectfully requests that the Court deny Blitzsafe's motion for futile venue discovery and grant BMWNA's and BMWAG's Motion for Reconsideration.

Respectfully submitted,

Dated: May 9, 2019

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:      (202) 408-4400

ATTORNEY FOR DEFENDANTS
BAYERISCHE MOTOREN WERKE AG, AND
BMW OF NORTH AMERICA, LLC

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who have consented to electronic

service are being served with a copy of this document via the Court's CM/ECF system per Local

Rule CV-5(a)(3) on this 9th day of May 2019.

<u>/s/ Lionel M. Lavenue</u>
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:      (202) 408-4400

ATTORNEY FOR DEFENDANTS
BAYERISCHE MOTOREN WERKE AG, AND
BMW OF NORTH AMERICA, LLC