# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| BLITZSAFE TEXAS LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| MITSUBISHI ELECTRIC CORPORATION, | § | **CIVIL ACTION NO. 2:17-CV-00430-JRG** |
| MITSUBISHI MOTORS CORPORATION, | § | (Lead Case) |
| MITSUBISHI MOTORS NORTH | § | |
| AMERICA, INC., | § | |
| | § | |
| BAYERISCHE MOTOREN WERKE AG, | § | **CIVIL ACTION NO. 2:17-CV-00418-JRG** |
| BMW OF NORTH AMERICA, LLC, | § | (Member Case) |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Blitzsafe Texas, LLC's ("Blitzsafe") Opposed Motion for Venue Discovery ("the Motion"). (Dkt. No. 115). In the Motion, Blitzsafe seeks targeted venue discovery based on factual representations made by counsel for Defendant Bayerische Motoren Werke, AG ("BMWAG") and BMW of North America, LLC ("BMWNA") (collectively, "BMW") at this Court's April 30, 2019 hearing (Dkt. No. 116) on BMW's Motion to Reconsider Denial of Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or, in the Alternative, to Transfer ("BMW's Motion to Reconsider") (Dkt. No. 94). Having considered the Motion, the Court finds it should be and hereby is **GRANTED**.

I. **Factual Background**

Following the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), BMW sought to dismiss or transfer the instant case for improper venue ("BMW's Initial Venue Motion"). (Dkt. No. 60). This Court found that venue remained proper applying *TC Heartland* and the Federal Circuit's explication thereof in *In re Cray*, 871 F.3d

1355 (Fed. Cir. 2017), based on the particular business structure between BMW and BMW-brand dealers. The primary dispute was whether the established BMW-brand dealers were places "of the defendant" as required by *Cray*. 871 F.3d at 1360.

The Court found that BMW-brand dealers were places "of the defendant" for at least two reasons. First, the Court found that BMW "exercises . . . attributes of possession or control over," *accord id.* at 1363, the BMW-brand dealers in the form of warranty work that BMW-brand dealers are required to carry out, and which BMW supervises. (Dkt. No. 90 at 21–25). Since the Court found that BMW controlled the provision of warranty services, the Court found that "the defendant [BMW] . . . actually engage[d] in business" at the BMW-brand dealers, *accord Cray*, 871 F.3d at 1364, and thus found venue was proper. (Dkt. No. 90 at 14, 22–25).

Second, as an independent basis for venue, the Court found that BMW had taken a number of steps to ratify the BMW-brand dealers. *See Cray*, 871 F.3d at 1363 ("Thus, the defendant must establish **or ratify** the place of business."). BMW-brand dealers are named "BMW," bear the trademarked BMW logo, and are seamlessly integrated into BMW's public-facing website. BMW's website allows visitors to "Apply for Financing," "Get a Quote," "Search New Vehicle Inventory," "Schedule a Test Drive," "Build Your Own," "Contact a BMW Center," and even "Order Now" for cars that are located at the BMW-brand dealerships within this District. (Dkt. No. 90 at 15–21). In executing these functions, BMW's website does not include disclaimers that emphasize separation between BMW and the BMW-brand dealers, such as "authorized dealer" or "exclusive distributor" or "John Doe's BMW," and instead appears to represent that the BMW-brand dealers are merely location-specific stores of BMW—i.e., BMW of Tyler is BMW's location in Tyler. (*Id.* at 16). BMW's own public description of the BMW-dealers as "BMW Centers" reinforced the Court's conclusion that BMW adopted and ratified the BMW-brand dealers as its

2

own. (*Id.* at 20). The Court also took judicial notice that in a previous case before this Court, BMW had expressly conceded without reservation that it "has conducted and does conduct business in [the Eastern District of Texas] by distributing automobiles to dealers." (*Id.* at 13 (citing *Entry Systems, LLC v. Vivint, Inc.*, No. 2:14-cv-1089-JRG, Dkt. No. 21 ¶ 4 (E.D. Tex. Nov. 14, 2012))). In view of BMW's concession, its public representation, and the affirmative steps it takes to integrate the operations of BMW and BMW-brand dealers, the Court found that venue was proper.

After the Court issued its order, BMW moved for reconsideration. (Dkt. No. 94). In BMW's Motion to Reconsider, BMW substantially expanded an argument that the Texas Occupations Code ("TOC") precludes BMW from exercising control over BMW-brand dealers. In BMW's Initial Venue Motion, BMW consigned the TOC argument to a single sentence on a single page of BMW's 28-page brief. (*See* Dkt. No. 60 at 19). However, in BMW's Motion to Reconsider, BMW extensively discussed the TOC as a basis for rejecting venue and also submitted an "expert declaration on TOC" from Kenneth Herring, a former administrative law judge in the Texas Department of Motor Vehicles, purporting to definitively construe Texas law. (*See, e.g.*, Dkt. No. 94 at 8, 10–13 (arguing for reconsideration based on the TOC); Dkt. No. 94-7 (Herring Declaration)). When the Court granted oral argument on the Motion to Reconsider, BMW focused a large part of its argument on urging reconsideration based on the TOC. (*See* Dkt. No. 116).

Both in BMW's Motion for Reconsideration and at the hearing thereon, BMW made a series of factual representations about the degree of control it exercises over BMW-brand dealers, in light of BMW's apparent interpretation of the TOC. BMW claimed, for example, that it believed the TOC required it to honor any request for reimbursement of warranty work, no matter how unreasonable the BMW-brand dealer's request:

> THE COURT: So you're telling me if I go buy a new BMW and I have a mechanical problem within 30 days, it's covered by the warranty, and I take it to the dealership

in my area and they repair that mechanical problem, ***if any other mechanic anywhere on the planet would charge not more than $500.00 for it but that particular dealer wants to charge $50,000.00 for it, BMW will write them a check for $50,000.00 and not question it in any way?***

MR. LAVENUE: ***BMW would pay the check***. Whether they would question it, I think they would question it and they would ask about it, but it's basically a relationship issue in that BMW North America wants to have good relations with the dealer.

(*Id.* at 13:2–14) (emphasis added). BMW went so far as to claim that BMW-brand dealers could make purchases from BMW *competitors* and BMW would have no choice but to grant reimbursement, effectively putting money into the pockets of its own competitors. (*Id.* at 12) ("MR. LAVENUE: The dealer is able to do ***whatever they wish***. In Texas -- unlike any other state in the -- in the country, Texas has the most harsh occupational code for automotive dealerships than any. It's – it's number 1 out of 50. And ***basically dealerships have carte blanche to do whatever they want*** in Texas.") (emphasis added).

BMW also claimed that it believes that Texas law renders unenforceable *all* of its contractual rights against BMW-brand dealers. (*Id.* at 58:12–14). When the Court sought to confirm this description with BMW's counsel, BMW repeated its assertion:

THE COURT: ***So it's just a good faith handshake*** between BMWNA and BMW of Tyler? They just smile at each other while millions of dollars of inventory go back and forth and millions of dollars of sales take place, ***and because of this one state statute, they can't have any binding contractual obligations where the manufacturer would exercise any direct control over what happens at the dealership***? That's your position?

MR. LAVENUE: ***Not in the state of Texas***, as I understand it from my expert, Your Honor.

(*Id.* at 58:15–24) (emphasis added). BMW made similar factual representations disclaiming its trademark rights, property ownership interests, and any other action that could possibly constitute control. (*See, e.g.*, *id.* at 20:3–17; 38:20–25).

After the hearing, Blitzsafe filed the present motion seeking discovery to see if BMW's representations in Court match BMW's conduct in practice.[1] Specifically, Blitzsafe seeks venue discovery with respect to:

> (1) the contracts that memorialize the relationship between BMWNA and each of the BMW dealerships in this District; (2) the identities, job titles, and roles of the BMWNA employees that visit and/or work with each of the dealerships in this District; (3) the identities, job titles, and roles of any other BMWNA employees that provide support, assistance, or training to the dealerships and/or each of their employees; (4) the details of how BMWNA provisions and pays for warranty service performed at each of the dealerships; (5) the details of how BMWNA supports the BMW dealerships in this District financially, including by subsidizing leases or vehicle financing and providing dealer incentives; (6) any communications between BMWNA and the BMW dealerships in this District within a limited, relevant time period; and (7) depositions of persons with knowledge of the relationship between BMWNA and each of the BMW dealerships in this District.

(Dkt. No. 115 at 5). Blitzsafe represents that it "expects that it can complete all such discovery on [an] expedited basis within 60 days of the date of the requested Order, and as such, requests that the Court grant it permission to do so." (*Id.* at 6). Blitzsafe attaches Exhibits A–D to its Motion, which show "exemplary document requests and deposition notices." (*Id.* at 5; Dkt. Nos. 115-1–115-4).

## II. Legal Standard

District courts have "broad discretion" in "all discovery matters," and as such, a district court's decision "will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)); *Green v.*

---

[1] Both parties note that Blitzsafe has previously sought venue discovery in this case. (*See* Dkt. No. 66 at 19 n.4 (requesting discovery); Dkt. No. 115 at 1; Dkt. No. 117 at 3 n.2). The Court did not address Blitzsafe's venue discovery request in its order denying BMW's Initial Venue Motion and instead decided on the papers in view of the arguments made by the parties at the time. (Dkt. No. 90).

*Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) ("A district court abuses its broad discretion when its decision is based on an erroneous view of the law, but we will only vacate a court's judgment if it affected the substantial rights of the appellant. The appellant must prove both abuse of discretion and prejudice." (citing *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011))) (citations omitted).

In all cases, discovery decisions "must . . . adhere to the liberal spirit of the Rules" of Civil Procedure. *U.S., ex rel., Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 469 (5th Cir. 2015), *aff'd sub nom. State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436 (2016) (citing Fed. R. Civ. P. 26(b)(1)). The court's discretion—and the liberal thrust of the Rules of Civil Procedure—extends to jurisdictional discovery.[2] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006) (holding that jurisdictional discovery decisions "will not be disturbed" absent a "clear abuse") (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)).

Particularly because the Rules favor broad discovery, jurisdictional discovery should only be denied where it is *impossible* that the discovery "could . . . add[] any significant facts" that might bear on the jurisdictional determination. *Alpine View*, 205 F.3d at 221. Put another way, jurisdictional discovery should typically be granted unless "no amount of information . . . would strengthen" the movant's jurisdictional claims. *Id.* (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)). Since evidence of jurisdictional facts is often largely or wholly in the possession

---

[2] The term "jurisdictional discovery" encompasses both the venue inquiry and the personal jurisdiction inquiry, because each inquiry must be satisfied before the court has authority of the court to render a valid judgment. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013) (holding that a case filed the "wrong" venue must be dismissed venue under 28 U.S.C § 1406(a)); *Daimler AG v. Bauman*, 571 U.S. 117, 124 (2014) (holding that a court which lacks personal jurisdiction must dismiss the case).

6

of an adverse party, broad jurisdictional discovery also ensures that jurisdictional disputes will be "fully and fairly" presented and decided. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1345 (5th Cir. 1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)); *accord Pudlowski v. St. Louis Rams, LLC*, 829 F.3d 963, 964–65 (8th Cir. 2016) ("[Discovery] as to jurisdiction or venue . . . makes good sense given that jurisdiction is (1) important, (2) often fact-intensive, and (3) only required to be alleged plausibly . . . . A court has an independent obligation to ensure that the case is properly before it. Discovery is often necessary because jurisdictional requirements rest on facts that can be disputed . . . ." (quoting *Oppenheimer Fund*, 437 U.S. at 340 n.13)); *Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159 (7th Cir. 2000) (recognizing that district courts have discretion to permit limited venue discovery. The *scope* of jurisdictional discovery is circumscribed by the rule which authorizes it—Rule 26—which requires, among other things, that discovery be "proportional to the needs of the case". Fed. R. Civ. P. 26(b)(1).

### III.  Discussion

Venue discovery is appropriate because the parties' dispute over venue turns in part on the degree of control that BMW exercises over BMW-brand dealerships. Venue discovery with respect to those disputed factual premises will therefore facilitate resolution of the venue dispute "fully and fairly." *Rozier*, 573 F.2d at 1345.

BMW does not seriously dispute that discovery would illuminate these issues. BMW does not argue that Blitzsafe's proposed discovery is overbroad, oppressive, impractical, or otherwise inappropriate under Fed. R. Civ. P. 26. BMW instead opposes venue discovery on the basis that discovery would be "futile" for two reasons,[3] which essentially boil down to "we are right." While

---

[3] BMW further criticizes Blitzsafe's request for venue discovery. (*See, e.g.*, Dkt. No. 117 at 8 (claiming that Blitzsafe's motion is not "legitimate" and imputing bad faith to Blitzsafe by alleging the motion was brought for improper purposes)). These arguments are unavailing.

7

the Court does not question the sincerity of BMW, it is not persuaded that such presents a reasonable basis to deny this Motion.

## IV. Conclusion

The Court **GRANTS** Blitzsafe's present Motion (Dkt. No. 115) because the Court finds that Blitzsafe's proposed venue discovery is narrowly tailored and will facilitate fair and full adjudication of the parties' venue dispute. Accordingly, the Court **ORDERS** that Blitzsafe has leave to conduct the venue discovery described in the Motion. Specifically, Blitzsafe may serve document requests and 30(b)(6) deposition notices substantially consistent with those described in Dkt. No. 115-1 ("Exhibit A") and Dkt. No. 115-2 ("Exhibit B") upon BMWNA. Blitzsafe may use up to ten hours to depose BMWNA's 30(b)(6) witnesses. Blitzsafe may also serve the third-party subpoenas substantially consistent with those described in Dkt. No. 115-3 ("Exhibit C") and Dkt. No. 115-4 ("Exhibit D") upon the four BMW-brand dealers located in this District (BMW of Beaumont; BMW of Tyler; Classic BMW; and MINI of Plano).

The Court further **ORDERS** the parties to meet-and-confer on appropriate amendments to the Docket Control Order in view of this Order, and to jointly file a proposed amended Docket Control Order no later than **Monday, May 27, 2019**. All venue discovery must be completed within sixty days of this Order on **July 22, 2019.**

**So ORDERED and SIGNED this 22nd day of May, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE